Thanks very much, Your Honor. Good afternoon, and may it please the court. My name is Joseph Davis, and I represent the plaintiffs' appellants, and I'm going to aim to reserve about a minute of my time for rebuttal. Your Honor, four different lower court judges have considered the government's mootness arguments in this case. Two different magistrate judges and two different district judges, and all four of them have rejected the argument, and for good reason. This court's precedents unambiguously hold that the completion of a construction project doesn't suffice to And that's because even after completion, the court retains broad equitable authority to order remediation. Okay, well let me stop you right there and ask you what relief are you seeking, and what power does this court or the lower court have to give you that relief? Yes, Your Honor, we're seeking remediation of the site that would make the plaintiff's religious exercise there again possible. Allow those religious exercises. And do any of the now in the case have the power to do that remediation? Yes, Your Honor, so to be more precise, what we're seeking is things including the rebuilding of the plaintiff's sacred altar, the replanting of trees, and the removal of the grassy burn. But my question is, who has the power to do that? It looks to me as though the department, the Oregon Department of Transportation has the power to do that, and they're not a party. Does it do any of the parties to the case have the power to do that? Yes, Your Honor, the federal government has the power to do that, and here's how we know that. We have the right-of-way in the record, and there's also federal law that governs the granting of right-of-ways. And those two converge on this point, which is that it's undisputed that the federal government continues to own this land in fee simple, and it's also undisputed that the federal government continues to have authority to use the land for any non-highway purpose, as long as it doesn't interfere with the free flow of traffic or with highway safety. Now here, the government hasn't even attempted to argue that any of the forms of remediation that plaintiffs seek would fall into those exceptions, much less has it shown that all of them would, which is what it would need to do in order to carry its heavy burden to show mootness. So that's one point, Your Honor. So the relief that we seek is consistent with the right-of-way. Many of the modest forms of relief that we seek are consistent with the right-of-way. The second point is that even if there were some conflict between the forms of remediation that the plaintiffs seek and the right-of-way, that still wouldn't pose an obstacle to the court granting that relief, and thus it still wouldn't show mootness. And we know that from this court's precedents, like the Connor v. Burford case, like the Bonneville Power case. Both of those cases are cited in our brief. And what those cases hold is that when a court is asked to remedy a violation of public law, it's not bound to stay within the terms of the government's private contracts with third parties. It can require the government to go beyond those terms. And so even if we were to assume some conflict, which, again, the government hasn't shown, that still wouldn't be an obstacle to the court granting the relief that we're seeking here. Because your time is short, let me move on and ask you about latches. Why is there not latches here? We're talking about injunctive relief, so latches applies. The argument now being made as to this being a sacred site was never made before the administrative agency and was never made until the project was completed. So why is there not latches here? Well, a couple of responses to that, Your Honor. First, I would dispute that summation of the facts sort of toward the end of that question. The fact that this was a sacred site that was used by Native American religious practitioners was clearly raised well before the project was completed. It was raised before tree-cutting began. It was raised before the tree-cutting permit was even granted. And it was raised before the right-of-way was even granted. And that's in the record. These are the best source for that are the memoranda that were submitted by the plaintiff, Carol Logan, in February 2008. Well, I guess I should say it this way. The claims of sacred sites that are now being advanced are very different from the claims that previously advanced. There was a claim with respect, for example, to the rock pile. Well, that was very seriously investigated. And I'm not in a position to second-guess one way or the other, but there was a conclusion by experts that this was, rather than an altar, it was just a rock pile. Your Honor, I think if you're referring to the archaeological excavation, the conclusion by the experts was that there was no burial underneath the pile. The experts didn't come to any conclusion about the use of it. And in fact, they concluded that it was very old, that it might be indigenous. So I think the archaeological excavation is perfectly consistent with what the plaintiffs are saying about the altar in this case. I think you and I might have read a different record. The experts were saying, this looks like somebody dumped some rocks here, maybe to close off some access to a trail or a road. So are you referring there to maybe the Grand Ronde cultural coordinator, the correspondence there between him and the government? And I think if that's what we're talking about, not the archaeological excavation, I would say that even there, you have the Grand Ronde cultural coordinator saying he didn't actually know what the rock feature was. He said it may be a prayer area and that other members of the tribe are concerned about it. And I think that's in 6 ER 1157, where he says that. And I think even if there is some dispute within the Native American community about the use of a particular feature, I don't think that should come as any surprise to the government. Certainly, the government's own tribal consultation guidelines, like Bulletin 38, which is the main source for identifying Native American cultural resources under the NHPA, says that the government shouldn't rely entirely on the current leadership of the tribe because they may not have the relevant expertise and they may even be embarrassed by traditional matters. So I don't think the fact that the tribal coordinator said that is at all positive. And again, the tribal coordinator said, the cultural coordinator said, it may be a rock, it may be a prayer area and other members of the tribe are concerned about it. So I think to get back to your question about latches, your honor, I think the Petrella case is utterly clear that latches cannot apply to bar a claim, even for equitable relief. There were equitable relief claims at issue in Petrella, as long as they're brought within a stat, a congressionally set statute of limitations. There's no dispute that our claim was timely filed under that. In fact, the plaintiffs filed on the exact day that the government itself identified in its federal registered notice as the time for filing of claims. I'm confused by your reading of Petrella because I agree it says that latches doesn't bar the action as a whole, but it quite expressly says that it can make some forms of equitable relief unavailable, doesn't it? Yes, your honor, it does. It talks about extraordinary circumstances, like when a plaintiff is asking for an entire project to be torn down, which again is not what we're asking for. We have a number of more modest forms of relief that we're seeking than that. Okay, but I mean, just so we agree on, do we agree on the principle then that the fact that you're within the statute of limitations doesn't answer the question of whether there's a latches barrier to the equitable relief that you're seeking, does it? In extraordinary circumstances, I think Petrella leaves that door open. Yes, what Petrella says is that latches can still come into play on equitable relief, but it comes into play at the remedy stage. It doesn't apply to outright bar claims at the beginning, and the government expressly agreed with that reading of Petrella before the district court. It changed its position between the time it filed its brief for the magistrate and the time it filed its brief to the district judge, and it agreed with the plaintiffs that under Petrella, latches was best considered at the remedy stage. Well, but we don't, we, I mean. Right, that's right, that latches is considered at the remedy stage, but article three requires us to ask, you know, is there some remedy that could be available, and if the answer to that is no, then we have a jurisdictional problem, right? Yes, your honor, I would agree with that, and I would point the court to its many cases in this exact context of completed construction projects. So the West case, which cites a number of cases itself, the wild wilderness case, and what all these cases stand for is the proposition that even the completion of a construction project doesn't suffice to move the case as long as there's some relief that the court could grant. Well, and the court doesn't conduct a remedy. If I can interrupt for just a moment, what latches says is if the plaintiff now seeking some form of equitable relief sat on their hands, allowed something to go forward, and then after having sat on their hands and allowed the others to act to what turns out to be their detriment if a remedy is allowed, that can bar equitable relief. It doesn't say extraordinary circumstances. It says if by their inaction the plaintiff allowed something to go forward and now seek to undo it, that's latches. I mean, that's just a description of the doctrine. But I think Petrella says the extraordinary circumstances piece comes from Petrella because it's talking about can a court, you know, intervene and overrule Congress's designation of when it's timely for a plaintiff to file a case, and if the claim is timely filed within the statute of limitations, then latches usually doesn't apply even to equitable claims. That's what, again, that's what the government agreed with below, and the court should hold it to that concession. But I think even if we looked at whether latches applied, your honor, we'd have to go through the latches analysis. We'd have to show unreasonable delay, and we'd have to show prejudice. On the unreasonable delay point, this case was filed on the very day that the government itself identified in its federal registered notice as the date for the filing of claims seeking judicial review. It can't possibly be unreasonable to file by the deadline that the government itself set, and the government hasn't even attempted to identify any prejudice. And your honor, we didn't, you know, with respect, there was no sitting on hands here. The memos that I was citing earlier from Carol Logan were in February of 2008. That's before the granting of the tree cutting permit in late February. That's before the granting of the right-of-way in early April. It's before tree cutting began. It's before construction began. The government rejected the plaintiff's concerns that were raised before it, and it hasn't even come close to identifying any prejudice or unreasonable delay. Well, what do you mean by prejudice? The whole project went forward at a considerable expense, and nothing was done to say that there was anything wrong with it. Right, your honor. The government went forward with the project after it had been informed of our concerns, and that's exactly why this court has the mutinous doctrine that it has. In cases like West, in cases like wild wilderness, is to discourage the government from trying to avoid judicial review by going ahead and completing its allegedly illegal projects after suit has been filed. That's exactly why it's such a heavy burden, and the government hasn't carried that burden here. You didn't seek a preliminary injunction or anything to bar construction, did you? No, your honor, but we had filed our lawsuit. We had raised our claims, and we were vigorously pursuing claims. We had issues with the Oregon Land Use Board of Appeals. The plaintiffs have been vigorously pursuing their claims throughout. If I could just make one final point about the availability of relief with respect to ODOT, I'd just point out that, as we say in our briefs, the government expressly offered many of the very same forms of relief that plaintiffs are seeking here today. It expressly offered that to the plaintiffs, in this case, in settlement negotiations after ODOT had been dismissed from the case. That's the clearest possible demonstration that not even the government really thinks that it lacks the in front of us. No, your honor, we didn't. I mean, we didn't file the emails in the record. The door was left open to settlement years ago, and it hasn't been ever fully closed, so we didn't put that information in the record, but I don't think the government would disagree with the characterization. Could you have? I mean, normally, there's a rule against, I mean, Rule 409 prohibits parties from introducing that. Is there some exception to that that you'd be invoking here? Well, I think the rule prohibits the parties from invoking settlement negotiations to show liability, like on the merits, where, but this court has cases that say you can invoke settlement negotiations to show Article III justiciability. We cited that case in our brief, and that's what we're seeking to show here. Okay, well, we've taken you over time. We'll make sure to give you a chance to Ms. Pepin. May it please the court, my name is Joan Pepin on behalf of the federal defendants. As the court is aware, after a public outcry over the accidents and fatalities caused by the lack of a left turn lane, the Oregon Department of Transportation widened a little over a mile of Highway 26 by 14 feet to add a turn lane. That construction was completed in early 2009. The trees that plaintiffs say were part of the sacred site were cut down before March 2008, the rock feature that they speak of, the record is very unclear about whatever happened to it, but we know that whatever happened to it, it happened even before the trees were cut in March 2008. And the earth moving work was done, and the regrading and the building of the road was done in July 2008. All of these things happened before they even brought suit, which they did on the day that the statute of limitations expired. Even then, they didn't serve that complaint until four years later, when this project was virtually complete. There is at this point, nothing that these features that they claim made their site sacred are irretrievably gone before the site was even, before the suit was even brought. And there's no relief that can bring it back, and therefore this case is moot. Now, the plaintiffs argue that there is relief that could be granted, that the federal defendants could remove the guardrail or remove the embankment, what they call a berm, which is not quite accurate, and could plant trees and could bring back the stones. None of these things are possible, or at least not within the federal defendants' exclusive control for several reasons. The embankment and the guardrail are engineered parts of the highway. They are exclusively within ODOT's control, and we do not have the authority to remove them. Trees, maybe, but it would be subject to ODOT's control where they would go. And they certainly can't go where they used to be, because that is now literally underneath the roadway. As plaintiff's complaint itself reveals, their original complaint, and I'm, anyway, they did testify that, they say in the complaint that these trees are extremely close to the roadway, and so was the rock feature. And you can see the truth of that in their brief. On page 24, they have an aerial shot where they show exactly where this site was, and then two pages later, they show some photographs of the roadway, and you can see it's incredibly close to the roadway. So, it's extremely unlikely that ODOT would permit trees to be placed where the road is now, or even right next to it for safety reasons. They do keep a zone right next to the roadway clear for safety reasons. So, all of these forms of relief are outside our and they cannot be brought back. So, relief is impossible for that reason. Now, Mr. Davis has said that the government is not telling the truth about this, that we, in fact, offer to do all these things in settlement. I'd like to say two things about that. First of all, as Judge Miller alluded to, Rule 408 of Federal Rules of Evidence forbids the use of an offer of settlement, quote, to impeach by a prior inconsistent statement or a contradiction, which is clearly what they are I think I should at least be allowed to say that we disagree with their characterization, and we disagree that our offer was actually inconsistent, but really, the court shouldn't be listening to me or Mr. Davis about what was offered in settlement, because that information is clearly barred. If the court should disagree about that and want to know what was in those letters offering settlement, then please direct us to submit them under seal, and the court can Now, of course, it is possible for outside of ODOT's right-of-way to reconstruct another site, a replica site, but the question is whether that would be meaningful relief in this case. In some cases, this court has found that if a wetlands is destroyed, then mitigation on a different wetlands can be relief, but in this particular case, the plaintiffs have told us that nothing but the restoration of this original location will redress their injuries. On page one of their opening brief, they say that the ceremonies that took place at this site cannot take place anywhere else. In their reply brief on page 16, they say that this 0.7 acre site is the locus of religious practices that cannot be replicated elsewhere, and they've also said on page 12 of their opening brief that there is no other site where the plants can be gathered that they say used to be gathered here. So, by their own is not effective relief for the harms that they've claimed in this lawsuit. So, because the only relief that would redress their injuries would be within ODOT's right-of-way, and that ODOT has been dismissed on 11th Amendment grounds, no effective relief can be granted in this case, and it should be dismissed as moot. May I ask you, you started out with a recitation of the chronology here and pointed out that the most of the work, most of what happened to the site was done before suit was filed. Why then, I'm wondering why this is an issue of mootness rather than one of standing. If the problem existed the day the suit was filed, why have you characterized it as mootness? Well, mootness and standing are very closely related in terms of is there a case of controversy, and I guess, you know, because we are where we are at this point of time, you know, I mean, they claim to have been harmed perhaps if they had sought, I mean, realistically by the time they brought this suit, all the damage had been done. Well, you were being generous and conceding that perhaps if they had acted earlier, they might have been able to do something. I mean, I don't think the project was fully complete until, the record isn't really clear on when everything was absolutely done. There are photographs showing a completed road by April of 2009, so we know it was done by then, but we don't really know whether it was also done in December 2008, for example. I just, I just don't know. But really, it's not so much when was the pavement laid, it's when were the trees cut down. We know when that was, it was before March 15, 2008. It's when was the rock feature removed. Really, nobody knows when that happens, but we know it happened before the construction of this roadway. And, you know, when was the regrading work done? That was done in the summer of 2008. The EA in this case was issued on January 25, 2007. The plaintiffs could have, they were well it wasn't related to this site, it was about an unrelated pair of pillars, but they could have brought suit before any of this began, but they chose not to. And the consequence of that is, unfortunately, the damage is done. And that is exactly what this court has recognized that prejudice means in the latches context, which is the other reason. Yeah, could you address latches before your time runs? Indeed, your honor. This case is very, very similar to the Apache Survival Coalition in this case. Yeah, the Apache Survival Coalition decision. And I want to briefly address Mr. Davis has argued that under Petrella only under extraordinary circumstances can latches bar equitable relief. That is not correct. What Petrella said is only under extraordinary circumstances can latches bar from the outset. Two things, this might be that um, things had gone before they filed suit and then before they had served that complaint. But secondly, we are far from the outset of this suit. And because we are in, we're discussing mootness, the question inherently is what relief can be granted? Well, if, if even if we were at the remedy stage, that's, that's where you find out what relief can be granted. So it's entirely appropriate in the context of mootness to consider latches because it governs what relief can be granted. As for whether latches is appropriate here. I mean, they clearly slept on their rights. They were given notice of this project, actual notice by certified mail in 2005. All of the plaintiffs testified in their standing best declarations that they work together. Two of them were, um, Mr. Jones and Ms. Logan were the co-founders of Plaintiff Cascade Geographical Society. And Mr. Slockish and Mr. Jackson and Mr. Jones and Ms. Logan together founded the Mount they all said that they were working together. So they were all on notice of this and they showed that they were capable of commenting. They did submit one comment. It just wasn't about this site. All of this came up at the last minute, right when the trees were about to be cut long after the appropriate time period for commenting had passed. And so, um, under, you know, Apache Survival Coalition, um, in that case, the facts were extremely similar. The only main difference is the project was only 35% complete, um, when that complaint was filed. Whereas in this case, you know, by the time, at least by the time the complaint was served, it was virtually 100% complete. And by the time they added a religious exercise claim, which wasn't until 2010, it had been complete for over a year. So there's clearly the element of lack of diligence and then prejudice in the environmental law context has a rather special meaning. This court has held that harm that Congress sought to prevent through the relevant statutory scheme is now irreversible or is reversible only at undue cost to the relevant project. And the factors are the money spent on the project. Well, that was $5 million of federal money plus the state's money and the extent to which the project has already progressed so far that the harm, which the plaintiffs fear has already occurred. And we've been over this several times, the harms that they feared had occurred before they even filed the complaint. And so latches applies here, and it is an additional independent reason, apart from ODOT's control over the right of way, why relief cannot be granted in this case. And therefore it is moot. Okay. Any further questions from the bench? Thank you. Let's put two minutes on the clock for response. I appreciate that. I'd just like to make two brief points in response. First is that I want to draw your attention to what the court didn't hear just now. The court didn't hear a single case offered by the government that found mootness in circumstances like this. That's because there's a mountain of this court's case law that cuts in the contrary direction. There's the West case, which is about the removal of a completed interchange that had been carrying traffic for years. By the time this court reached the merits of that decision, there's the Tyler versus Cuomo case, which is about ordering structural changes to a housing project that reached its decision. There's the Gordon case, which is about challenges to salmon fishing regulations of a salmon season two years in the past. So there's simply no precedent for the sort of mootness argument that the government's asking you to adopt here. And the government hasn't distinguished any of the cases that plaintiffs have offered. The government also hasn't distinguished the Bonneville Power and Connor versus Burford cases. And so those cases stand for the proposition, again, that even if the court were convinced that there was some mootness, those cases stand for the proposition that wouldn't be a bar to relieve. The government simply had no answer to Bonneville Power and Connor versus Burford below, and it has no answer to those cases here before you. On the latches point, I just want to make three brief points on latches. First is that the government plainly waived its latches defense. It filed four answers over the course of a decade in this case, none of which raised latches, and latches is required to be raised under Rule 8. That strongly prejudiced the plaintiffs because this case could have been instead of two of them having died in the many years since this case has been pending. Second point about latches is that not only did the government waive it by not raising its answer, it's actually judicially a stop from pressing the position that it's pressing before you now. Again, I'd point the court to what the government said in its brief to the district court, that it agreed with the plaintiffs that under Petrella, latches can only be considered at the remedy stage, and so it declined to discuss its latches defense. And then third is that Apache survival only demonstrates the contrast with this case. In Apache survival, the key fact was that after the plaintiffs had raised their concerns in general terms, the government followed up with them, asked for more information, and the Native American plaintiffs refused to provide more information about their sacred sites. Here, after we raised our concerns in February 2008, the government simply flatly rejected them and went ahead with this project. So with that, I'd ask the court to reverse the district court, barring any further questions from the court. Okay, thank both sides for your helpful arguments. The case of Slakic versus U.S. Department of Transportation is now submitted for decision, and that completes our argument for this afternoon. Thanks very much. We're now in adjournment.
judges: SCHROEDER, FLETCHER, MILLER